UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLORIA MILLER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:16-cv-01063 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born April 1, 1966, applied on June 22, 2012 for SSI, alleging disability beginning in November 2010. Administrative Transcript ("AT") 198-206. Plaintiff alleged she was unable to work due to asthma, depression, anxiety, left ankle injury, insomnia, and muscle spasms. (AT 199.) In a decision dated November 21, 2014, the ALJ determined that plaintiff

////

was not disabled.[1] (AT 20-36.) The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since June 22, 2012, the application date.
>
> 2. The claimant has the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; left ankle open reduction-internal fixation surgery due to left bimalleolar fracture and subsequent hardware removal; asthma; and depression.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CRF 416.967(b) except: she needs to alternate between sitting and standing two times per hour for stretch breaks at the workstation briefly; she may occasionally use the left lower extremity for foot controls; she can frequently climb ramps or stairs, or crouch; she cannot climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to fumes, odors, and dusts; she can perform simple, repetitive tasks; she may occasionally perform complex or technical (semiskilled) tasks; she may have frequent interaction with coworkers and supervisors; and she may have occasional interaction with the public.
>
> 5. The claimant is unable to perform any past relevant work.
>
> 6. The claimant was born on April 1, 1966 and was 46 years old, which is defined as a younger individual age 18-49 on the date the application was filed.
>
> 7. The claimant has a limited education and is able to communicate in English.
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since June 22, 2012, the date the application was filed.

AT 22-36.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) The ALJ's residual function capacity finding is flawed, as the ALJ had insufficient reasons to reject the medical opinions of physician Dr. Haddadan and Dr. Lim, whose opinions should be credited; and (2) the ALJ gave legally inadequate reasons for rejecting plaintiff's testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

3

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Residual Functional Capacity

Plaintiff contends that the ALJ erred in evaluating her residual functional capacity; failed to give legally adequate reasons for rejecting the opinions of her treating pain specialist, Dr. Haddadan and her treating psychiatrist, Dr. Lim; and erred in discrediting plaintiff's testimony.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by

the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).

Plaintiff first contends that the ALJ erred at steps two and four of the sequential evaluation process for classifying impairments when she failed to acknowledge plaintiff's hand impairment, myofacial pain syndrome, myalgia and myositis or Posttraumatic Stress Disorder. This failure "infected" the ALJ's step four RFC finding, plaintiff argues, because the ALJ did not consider the effect of these impairments in determining that plaintiff had the residual functional capacity to perform light work with certain limitations. Plaintiff cites the example of her carpal tunnel syndrome, diagnosed and treated by Dr. Haddadan, but allegedly disregarded in the step four evaluation, as one such error.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Here, the ALJ found plaintiff to have other severe impairments and considered all of plaintiff's medical impairments in formulating residual functional capacity. In step four, the ALJ noted plaintiff's hand braces for "throbbing and cramping in her hands" (AT 25) and evaluated opinions from multiple physicians about plaintiff's severe and non-severe impairments. The ALJ also considered plaintiff's ability to do manual tasks, such as prepare and cook large family meals, thus considering the functional impact of plaintiff's non-severe carpal tunnel syndrome. In light of the above, the court finds no error in the step two analysis.

Plaintiff next argues that the ALJ erred in its consideration and weighing of the medical opinion provided by Dr. Haddadan, a treating pain specialist, and Dr. Lim, a treating psychiatrist.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester v.

5

Chater, 81 F.3d 821, 831 (9th Cir. 1996). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Haddadan

On October 10, 2013, Dr. Haddadan saw plaintiff for a consultation about neck and back pain. (AT 664.) He noted plaintiff's reports of longtime pain and observed a limited range of motion in plaintiff's cervical spine and lumbar spine. (AT 664-665.) Dr. Haddadan diagnosed the following conditions: lumbar disk syndrome, cervical disk syndrome, lumbar spondylosis, muscle spasm, and myofascial pain syndrome. (AT 665.) He prescribed Tramadol and physical therapy. (AT 665.)

On October 24, 2013, Dr. Haddadan noted plaintiff's ongoing reports of pain, conducted a musculoskeletal examination and observed tender points and trigger points. He diagnosed her with the following conditions: displacement of thoracic or lumbar intervertebral disc, lumbrosacral spondylosis, myalgia and myositis, and displacement of cervical intervertebral disc. (AT 663.) He increased her prescriptions of Norco and Gabapentin (for nerve pain). (AT 663.)

On December 8, 2013, Dr. Haddadan noted plaintiff's reports of ongoing pain. (AT 662.) He again noted multiple tender points in plaintiff's paraspinal muscles and added Xanax to her prescribed medications. (AT 662.)

On January 2, 2014, Dr. Haddadan documented plaintiff's reports of ongoing pain in her back and extremities, anxiety, and other symptoms. He again observed multiple tender points in

6

plaintiff's paraspinal muscles. (AT 661.) Dr. Haddadan increased her dosage of Xanax and continued her dosages of Norco and Gabapentin. (AT 661.)

In February and March 2014, Dr. Haddadan saw plaintiff twice, noted the same medical issues as before, and increased the dosages of her prescriptions. (AT 657, 659.) On March 18, 2014, he administered a carpal tunnel steroid injection to plaintiff's left wrist. (AT 656.) On April 1, 2014, he administered a steroid injection to plaintiff's right wrist. (AT 653.)

Dr. Haddadan continued to see plaintiff monthly in May, June, and July 2014. (AT 646-650.) He noted her ongoing pain symptoms and tenderness around the spine, refilled her prescriptions, and noted that a spine surgeon who evaluated plaintiff recommended "a nerve study for the hands to see the severity of the carpal tunnel syndrome." (AT 648.)

On August 22, 2014, Dr. Haddadan filled out a two-page form indicating that plaintiff's medical problems precluded her from performing any full-time work at any exertion level, including the sedentary level. (AT 666-667.) He listed her primary impairments as back and arm pain, and also indicated that she had limitations due to pain in both hands, caused by degenerative disc disease as determined by an EMG. (AT 666-667.) Dr. Haddadan indicated that plaintiff had been disabled to this degree since her first visit in October 2013. (AT 666-667.)

In her step four analysis, the ALJ stated: "I considered but give little weight to the opinions of Dr. Kayvan Haddadan. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." (AT 31.) The ALJ concluded that Dr. Haddadan "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept most, if not all of what the claimant reported." (AT 31.) As discussed elsewhere, the ALJ found plaintiff less than credible. (AT 31.) Reviewing the medical record underlying Dr. Haddadan's diagnoses, the ALJ found no diagnostic evidence of severe impairment. (AT 31.) While the ALJ believed plaintiff had some back pain related to her spine issues, the level of limitation opined by Dr. Haddadan was "given little weight because it is inconsistent with the medical evidence as a whole." (AT 31.)

////

Plaintiff argues that the ALJ did not properly consider Dr. Haddadan's opinion in the context of his treatment notes, which documented multiple tender points in plaintiff's paraspinal muscles, a limited range of motion in her lumber spine, and other limitations. Plaintiff further argues that the ALJ erroneously failed to consider the positive findings of plaintiff's limitations elsewhere in the record.

The ALJ considered Dr. Haddadan's treatment notes, but rejected as unsupported his assessment that plaintiff was incapable of performing any full-time work at any exertion level. An ALJ may properly discount a treating physician's opinion when it is only minimally supported by the other medical evidence in the record. Meanel, 172 F.3d at 1113 (discounting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751. Dr. Haddadan repeatedly found plaintiff to have normal strength, reflexes, and sensory examinations. (AT 646-665.) Based on a review of the whole record, the ALJ observed that, after plaintiff's May 2012 ankle surgery, her treatment for pain symptoms "has been essentially routine and conservative in nature, consisting primarily of prescribed medications." (AT 27.) The ALJ also considered the assessments of state agency physicians, along with additional medical evidence not available to them. (AT 30.) Based on the objective medical evidence as a whole, the ALJ found plaintiff to be more limited than the state agency physicians determined, but not as limited as Dr. Haddadan contended. (AT 30.) Overall, the ALJ provided multiple specific and legitimate reasons for assigning only "little weight" to Dr. Haddadan's opinion that was supported by substantial evidence in the record.

It was also reasonable for the ALJ to cite Dr. Haddadan's apparent reliance on plaintiff's subjective complaints as an additional reason for giving little weight to his opinion. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding ALJ's decision to discount treating physician's opinion when it was "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's] medical condition, and was based on [the claimant's] subjective descriptions of pain"). Accordingly, the court finds that the ALJ did not err in considering and weighing Dr. Haddadan's opinion.

2. Dr. Lim

In July 2013, Dr. Lim, plaintiff's treating psychiatrist, completed a one-page assessment of plaintiff's functional abilities. To the first seven questions, Dr. Lim answered either "poor" or "fair," e.g., plaintiff's "ability to withstand the stress and pressures associated with an eight-hour work day and day to day work activity" was "poor." (AT 380.) Dr. Lim further indicated that plaintiff was "likely to remain disabled for 12-18 months," that her current episode has lasted up to three years, and that she was taking multiple psychiatric medications. (AT 380.)

In the step four analysis, the ALJ stated: "I have considered but give little weight to the opinion of Dr. Russell Lim. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Other than reporting the claimant was taking prescribed medications, Dr. Lim did not cite positive objective clinical findings to support his rather limiting functional assessment of the claimant. Therefore, the opinion of Dr. Lim is given little weight." (AT 34.)

Plaintiff argues that the ALJ failed to consider Dr. Lim's opinion in this context of his treatment notes, dating from May 2013 to August 2014. (AT 625-639.) Dr. Lim's notes indicate that plaintiff experienced insomnia, anxiety, and hallucinations, and in May 2013 had a Global Assessment of Functioning (GAF) score of 50.[2] However, the ALJ summarized Dr. Lim's treatment and diagnoses of plaintiff during this period. (AT 32.) The ALJ also considered plaintiff's mental health treatment record, including her reports of anxiety, hallucinations, and other "subjective complaints," as well as plaintiff's diagnoses of major depressive disorder and posttraumatic stress disorder and her GAF scores ranging from 50 to 60. (AT 31-34.)

The ALJ weighed the opinion of consultative psychological examiner Dr. Fang, but determined based on the overall record that plaintiff was more limited than Dr. Fang believed. (AT 33-34.) In contrast, the ALJ gave significant weight to the opinions of state mental medical

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of A 41-50 indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning. Id.

9

consultants Dr. Weiss and Dr. Patterson, having determined that their opinions were "reasonable and consistent with the evidence as a whole." (AT 33.) Based on their review of plaintiff's mental health records, both concluded that, while limited in certain ways, plaintiff was able to complete tasks, follow instructions without close supervision, maintain adequate attention and concentration, and work at an adequate pace to sustain a normal workday. (AT 107, 125-126.) Based on these and other assessments, the ALJ concluded that plaintiff could perform simple, repetitive tasks, could occasionally interact with the public, and could have "no more than frequent" interaction with coworkers and supervisors. (AT 33.) Having weighed these more detailed findings, the ALJ had specific and legitimate reasons for assigning only "little weight" to Dr. Lim's one-page assessment and cited substantial record evidence in support.

For these reasons, the court finds that the ALJ did not err in weighing Dr. Haddadan's and Dr. Lim's opinions and, accordingly, concludes that plaintiff's assessed residual functional capacity was adequately explained and grounded in substantial evidence.

B. Plaintiff's credibility

Plaintiff also challenges the ALJ's adverse credibility finding. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

| | |
|---|---|
| 1 | prescribed course of treatment, and (3) the applicant's daily activities.  <u>Smolen v. Chater</u>, 80 F.3d |
| 2 | 1273, 1284 (9th Cir. 1996); <u>see</u> generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406- |
| 3 | 01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and |
| 4 | effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. |
| 5 | <u>Light v. Social Security Administration</u>, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek |
| 6 | treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ |
| 7 | in determining whether the alleged associated pain is not a significant nonexertional impairment. |
| 8 | <u>See</u> <u>Flaten v. Secretary of HHS</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, |
| 9 | on his or her own observations, <u>see</u> <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir. |
| 10 | 1989), which cannot substitute for medical diagnosis.  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 177 n.6 |
| 11 | (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the |
| 12 | Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." |
| 13 | <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999). |

At the hearing in September 2014, plaintiff testified that she had problems with her neck and lower back, along with hand pain that had caused her to wear braces on both hands for two years.  (AT 65.)  Plaintiff testified that she took Gabapentin for her nerves and the pain medication Norco daily.  (AT 67.)  Plaintiff further testified that she had problems with her left ankle, which had been surgically repaired after a break; the implanted hardware was later removed.  (AT 69.)  Plaintiff stated that her pain medication eased the pain, but did not eliminate it.  (AT 71.)  She further testified that she used a cane, a walker, and a special shoe to support her ankle.  (AT 74-76.)  Asked about the effects of her depression, plaintiff testified that it prevented her from "going out and being around people and exercising and just doing my daily things[.]"  (AT 77-79.)  She also testified that she went grocery shopping with her fiancé, did most of the cooking at home, and prepared a large family meal once a month.  (AT 79-80, 83.)  Plaintiff testified that, despite physical problems, her mental health was the condition that most prevented her from working, citing her mood swings, anxiety, nervousness, and depression.  (AT 81-83.)  She testified that at times she heard the voices of monsters and giants, and had nightmares in which she was in a cage and saw disturbing images.  (AT 84-86.)

In step four, ALJ: "I find the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible. The claimant's allegations of debilitating and limiting physical and mental symptoms are inconsistent with the objective medical evidence, which can indicate an attempt by the claimant to exaggerate the severity of her symptoms." (AT 26.)

The ALJ first reasoned that, in light of plaintiff's "admitted daily activities" such as cooking, grocery shopping, and travel, her allegations regarding the severity of her symptoms were not generally credible. (AT 26.) The ALJ next noted that the "relatively benign medical evidence" did not support plaintiff's claimed need to use a cane all time and a walker at home. (AT 27.) Although plaintiff stated that pain affected her ability to walk, medical records showed her gait to be normal and her muscle strength in her lower extremities to be within normal limits. (AT 27.) The ALJ further observed that, following her ankle surgery, plaintiff's treatment for pain had been "essentially routine and conservative in nature," consisting mainly of prescribed medications, and that doctors had not treated plaintiff's pain more aggressively or referred her to a specialist. (AT 27.) The ALJ also recounted plaintiff's testimony that the prescribed medication was somewhat effective in easing her pain symptoms. (AT 27.) Thus, the ALJ concluded, plaintiff's allegations regarding the severity of her pain were "greater than expected in light of the objective evidence of record." (AT 27.)

Having compared the medical record to plaintiff's statements regarding her "debilitating ... physical and mental symptoms," the ALJ concluded that, while plaintiff's documented medical impairments likely caused those symptoms, plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (AT 26-27.) Based on the foregoing, the court concludes that the ALJ provided valid reasons for finding plaintiff less than fully credible, supported by substantial record evidence.

////
////
////
////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3. Judgment is entered for the Commissioner.

Dated: June 26, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/miller1063.ssi